UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

Bureau of Consumer Financial Protection,

    Plaintiff,

v.

BounceBack, Inc.,

    Defendant.

CASE NO.

**COMPLAINT**

The Bureau of Consumer Financial Protection brings this action against BounceBack, Inc. and alleges as follows.

**INTRODUCTION**

1. The Bureau brings this action under §§ 807 and 809 of the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. §§ 1692e & 1692g, and §§ 1031(a), 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a), & 5565, to address false, deceptive, or misleading practices in connection with the collection of debt.

**JURISDICTION AND VENUE**

2. This Court has subject-matter jurisdiction because this action is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

3.     This Court has personal jurisdiction over BounceBack because the causes of action arise from BounceBack's conduct in this district.

4.     Venue is proper in this district because BounceBack is located, resides, and does business in this district. 12 U.S.C. § 5564(f).

**PARTIES**

5.     The Bureau is an agency of the United States charged with regulating the offering and provision of consumer-financial products and services under "Federal consumer financial laws," 12 U.S.C. § 5491(a), including the CFPA, 12 U.S.C. § 5481(14). The Bureau has independent litigating authority, including the authority to enforce the CFPA. 12 U.S.C. § 5564(a), (b).

6.     Because BounceBack is a corporation, it is a "person" under the CFPA. 12 U.S.C. § 5481(19).

7.     At all times relevant to this Complaint, BounceBack has been a "covered person" under the CFPA because it "engages in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6)(A).

**FACTS**

*Overview*

8.     BounceBack, Inc., is a privately owned company based in Kansas City, Missouri. It operates back-check pretrial-diversion programs on behalf of more than 90 district attorneys (DAs) throughout the United States. BounceBack's pretrial-diversion program generally operates as follows.

9.     Merchants primarily submit dishonored checks to BounceBack through its affiliate, Check Connection, Inc.

2

10. After a merchant reports a dishonored check to Check Connection, Check Connection adds it to a list of dishonored checks by jurisdiction and sends it to the pertinent DA for review.

11. In nearly all cases, without receiving further direction from the DA, BounceBack then attempts to enroll the check writers in its pre-trial diversion program, which requires a check writer to pay the debt and also enroll in, pay for, and complete a financial-education course.

12. On rare occasions, merchants send the names of check writers directly to the local DA, who then forwards to BounceBack the names of specific check writers who it wants enrolled in the pretrial-diversion program. In most cases, however, Check Connection generates a list of check writers that it sends to BounceBack, which enrolls those check writers in its collections program without ever receiving direction from the DA to do so.

13. BounceBack then sends two to four letters, on DA letterhead, to the check writers in an effort to collect the outstanding debts and enroll them in the financial-education course.

14. The letters tell check writers that they could face criminal prosecution and conviction, but that they can avoid prosecution by paying the amount of the dishonored check, along with certain administrative fees, and completing a financial-education course. The recipient is instructed to pay the total fees owed to the "Check Enforcement Program" (in reality BounceBack), including a fee for the financial-education course that ranges from $100 to $165. If the check writer pays these amounts, then BounceBack sends the amount of the dishonored check to the merchant, pays small fees to the merchant and the DA, and keeps the balance.

15. BounceBack does not identify itself to check writers and does not inform them that it is a debt collector.

16. Although BounceBack's letters appear to come directly from the DA and suggest that check writers will face criminal charges if they do not comply, DAs almost never prosecute such cases.

17. Moreover, nearly all jurisdictions have given BounceBack one set of criteria for sending warning letters to check writers and enrolling them in a financial-education course, and a separate, more stringent set of criteria for referring a case back to the DA for potential prosecution when a check writer fails to respond to a letter. Given these distinct criteria, not all check writers who receive BounceBack's warning letters are even eligible for prosecution under the DAs' prosecution criteria.

18. In most cases, BounceBack does not refer cases for prosecution, even if the check writer fails to respond to the letter, does not pay the alleged outstanding debt and fees, or fails to complete the financial-education course.

19. BounceBack has sent collection letters to more than 19,000 consumers since January 1, 2015.

### *BounceBack is a Debt Collector Under the FDCPA*

20. BounceBack is a debt collector under the FDCPA.

21. Under 15 U.S.C. § 1692a(6), a debt collector is "any person who uses any instrument or instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect directly or indirectly, debts owed or due or asserted to be owed or due another."

4

22. The FDCPA provides that an entity operating a bad-check diversion program through a contract with a DA may not be considered a debt collector if the entity complies with certain statutory requirements. BounceBack did not comply with those requirements.

23. In most cases, BounceBack contacts check writers and attempts to collect on dishonored checks and enroll the check writers in its pre-trial diversion program without the DA having made a determination that "probable cause of a bad check violation under State penal law exists, and that contact with the alleged offender for purposes of participation in the program is appropriate," as required by 15 U.S.C. § 1692p(a)(2)(C)(iv)(I).

24. In addition, BounceBack's letters do not contain a clear and conspicuous statement that if the alleged offender notifies the private entity or the DA in writing, not later than 30 days after being contacted for the first time pursuant to 15 U.S.C. § 1692p(a)(2)(C)(iv), that there is a dispute pursuant to 15 U.S.C. § 1692p(a), then further restitution efforts will not be pursued until the DA or an employee of the DA authorized to make such a determination makes a determination that there is probable cause to believe that a crime has been committed, as required by 15 U.S.C. § 1692p(a)(2)(C)(v)(III).

### *False, Deceptive, or Misleading Representations in Connection with Collecting a Debt*

#### a. **BounceBack falsely represents that nonpayment will result in criminal prosecution.**

25. If a DA expresses interest in using BounceBack's services, BounceBack sends it an initial packet explaining its pretrial-diversion program. The packet contains templates of the collection letters BounceBack will send to check writers, which the DA

5

can change according to its preferences. Most DAs make few, if any, changes to the template.

26. BounceBack's collection letters state in several ways that a check writer who does not pay the outstanding check amount and fees for the pretrial-diversion program may face "criminal charges" or "criminal prosecution":

    a. "WARNING OF CRIMINAL CHARGES";

    b. "the total amount must be received . . . to avoid possible criminal charges being filed";

    c. "pay the total listed below to avoid the possibility of criminal prosecution";

    d. "It is still possible to avoid a CRIMINAL CONVICTION";

    e. "WARNING . . . You have 48 hours to contact the Check Enforcement Program, before your case is forwarded to final review . . . If the check(s) is not taken care of, a criminal complaint and a WARRANT may be issued commanding you to appear in court and CRIMINAL PROCEEDINGS may result";

    f. "Failure to make payment in full within THIRTY (30) DAYS from the date of this notice may be used as evidence in a possible criminal prosecution";

    g. "If payment can be arranged and compliance with the conditions of the Check Enforcement Program are met, you may yet be able to prevent the possibility of a WARRANT FOR YOUR ARREST being issued";

    h. "TO COMPLY: 1) Pay the full dollar amount shown within thirty days. 2) Complete the Check Writer's Financial Training Course";

    i. "ALL check writers whose checks have been referred to the Check Enforcement Program MUST complete the Educational Requirement to discharge the case as part of this diversion program";

    j. "FAILURE TO COMPLETE THE EDUCATIONAL REQUIREMENT CAN CAUSE YOUR CASE DIVERSION TO BE REVOKED."

27. These threats are in almost all instances false.

6

28. Each DA gives BounceBack criteria for sending out its collection letters, and different, often more stringent, criteria for determining which cases will be referred back to the DA for a review for prosecution.

29. BounceBack sends collection letters to check writers who do not meet the DAs' criteria for referral for prosecution.

30. For example, at least 29 of the more than 90 jurisdictions that BounceBack has contracted with will not prosecute check writers if the dishonored check is below a certain amount, but BounceBack nevertheless threatens those check writers with prosecution.

31. Moreover, even if a check writer qualifies for prosecution, BounceBack rarely refers cases for potential prosecution.

32. Most DAs refuse to prosecute dishonored-check cases even if check writers fail to respond to BounceBack's letters.

33. Finally, almost none of the check writers who enroll in the financial-education course return the confirmation that they have completed the course, and many never complete the course. Contrary to the threats in BounceBack's letters, BounceBack never refers those check writers to the DA for possible prosecution.

### b. BounceBack creates the false impression that the collection letters it sends are coming directly from a DA.

34. BounceBack's letters are sent on DA letterhead and appear to be statements from the DA.

35. For instance, a typical letter bears the DA's name and seal at the top. The letter also tells the check payer to send payment to the "[DA's] Check Enforcement Program," followed by an address that is actually BounceBack's address.

7

36. The letter nowhere states that it was sent by BounceBack, even though the letter comes directly from BounceBack, not a DA.

### c. BounceBack's collection letters do not reveal that BounceBack is a debt collector.

37. BounceBack sends letters that fail to state anywhere that BounceBack is a debt collector or that any information it obtains will be used for collections purposes, nor does BounceBack disclose in subsequent letters or phone calls with check writers that it is a debt collector.

38. Moreover, because its letters are sent on DA letterhead using the DA's seal and refer to the DA's "Check Enforcement Program," it is unlikely that a recipient would suspect that the letter is being sent by a debt collector.

### d. BounceBack fails to include certain required dispute notices in its collection letters.

39. BounceBack's collection letters fail to contain several required disclosures.

40. Several of BounceBack's letters state, "YOU MUST EITHER COMPLY BY MAKING PAYMENT OR NOTIFY THE CHECK ENFORCEMENT PROGRAM IN WRITING THAT YOU WISH TO DISPUTE THIS MATTER NO LATER THAN 30 DAYS AFTER RECEIVING THIS NOTICE," and "PAYMENT OR DIS[P]UTE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS LETTER."

41. But these same letters do not disclose that unless a recipient disputes the validity of the debt within 30 days, the debt will be assumed valid; that if a recipient disputes the validity of the debt within 30 days, the collector must verify the debt; or that if a recipient makes a request within 30 days, the collector will provide the original creditor's name and address.

# VIOLATIONS OF LAW

## COUNT 1—Violations of the FDCPA
### *Falsely Representing that Nonpayment Would Result in Criminal Prosecution*

42. The Bureau re-alleges and incorporates by reference paragraphs 1-41.

43. Section 1692e(4) of the FDCPA prohibits "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C § 1692e(4).

44. Section 1692e(5) of the FDCPA prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C § 1692e(5).

45. In connection with collecting or attempting to collect debt from consumers, BounceBack represented to consumers, directly or indirectly, expressly or by implication, that nonpayment of a debt would result in arrest or imprisonment.

46. In fact, neither BounceBack nor the DAs intended to take such action.

47. These acts and practices violated § 807(4) and (5) of the FDCPA, 15 U.S.C. § 1692e(4) & (5).

## COUNT 2— Violations of the FDCPA
### *Distributing Written Communications that Falsely Represented to be Issued by a State Official or Agency*

48. The Bureau re-alleges and incorporates by reference paragraphs 1-41.

49. Section 1692e(9) prohibits the "use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or

9

which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(9).

50. Section 1692e(14) further prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14).

51. In connection with collecting or attempting to collect debt from consumers, BounceBack represented to consumers, directly or indirectly, expressly or by implication, that written communications distributed to consumers were issued from an official or agency of a State.

52. In fact, the communications were from BounceBack, which used the names of the DAs in connection with collecting or attempting to collect debts from consumers.

53. These acts and practices violated § 807(9) and (14) of the FDCPA, 15 U.S.C. § 1692e(9) & (14).

### COUNT 3—Violations of the FDCPA
*Using False Representations and
Deceptive Means to Collect a Debt*

54. The Bureau re-alleges and incorporates by reference paragraphs 1-41.

55. Section 1692e(10) of the FDCPA prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(10).

56. BounceBack falsely represented that the failure to (a) pay the fees listed, including the dishonored-check amount, administrative fees, and fees for the financial-education course, and (b) complete the financial-education course, would lead to criminal prosecution, when in fact it would not for the vast majority of debtors.

10

57. Moreover, BounceBack designed its collection letters to appear to come directly from the DA when in fact they did not.

58. These acts and practices violated § 807(10) of the FDCPA, 15 U.S.C. § 1692e(10).

### COUNT 4—Violations of the FDCPA
*Failing to Reveal that BounceBack was a Debt Collector*

59. The Bureau re-alleges and incorporates by reference paragraphs 1-41.

60. Section 1692e(11) of the FDCPA prohibits the "[t]he failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11).

61. BounceBack's initial communications to consumers did not include that required disclosure.

62. These acts and practices violated § 807(11) of the FDCPA, 15 U.S.C. § 1692e(11).

### COUNT 5—Violations of the FDCPA
*Failure to Include Required Dispute Notices*

63. The Bureau re-alleges and incorporates by reference paragraphs 1-41.

64. Section 1692g(a) of the FDCPA provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" several specific disclosures.

11

65. Among these are the amount of the debt, the name of the creditor owed, and specific statements about how a consumer can dispute a debt and the effect of doing so. 15 U.S.C. § 1692g(a)(1)-(5).

66. BounceBack's collection letters failed to make the specific disclosures required by § 1692g(a)(3), (4) & (5).

67. These acts and practices violated § 809(a) of the FDCPA, 15 U.S.C. § 1692g(a).

## COUNT 6—Violations of the CFPA
### *Deceptive Representations that Failure to Pay the Alleged Debt and Program Fees Would Result in Prosecution*

68. The Bureau re-alleges and incorporates by reference paragraphs 1-41.

69. BounceBack's collection letters contained threats that not paying the alleged debt and required pretrial-diversion program fees would result in prosecution when, in fact, it would not.

70. These representations were false because, in most cases, the DAs did not intend to prosecute individuals who received collection letters threatening further action or prosecution. And almost none of the check writers who failed to respond to BounceBack's collection letters were ever referred to a DA for "review for prosecution."

71. BounceBack's misrepresentations were likely to mislead consumers acting reasonably under the circumstances.

72. BounceBack's misrepresentations were material because they were likely to affect the conduct or decisions of consumers regarding whether to pay the alleged debt and any other program fees.

73. Therefore, BounceBack engaged in deceptive acts or practices that violated the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

12

## COUNT 7—Violations of the CFPA
*Deceptive Representations that Failure to Complete
the Financial-Education Course Would Result in Prosecution*

74. The Bureau re-alleges and incorporates by reference paragraphs 1-41.

75. BounceBack's collection letters stated that failure to complete the financial-education course would result in criminal prosecution.

76. In fact, these representations were false because very few check writers returned proof that they completed the financial-education course, but no check writers were ever referred for criminal prosecution for that reason.

77. BounceBack's misrepresentations were likely to mislead consumers acting reasonably under the circumstances.

78. BounceBack's misrepresentations were material because they were likely to affect the conduct or decisions of consumers regarding whether to pay the program fees for the financial-education course.

79. Therefore, BounceBack engaged in deceptive acts or practices that violated the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## COUNT 8—Violations of the CFPA
*Deceptive Representations that Notices Were from a DA*

80. The Bureau re-alleges and incorporates by reference paragraphs 1-41.

81. BounceBack's collection letters gave the impression that they came directly from a DA when, in fact, they did not.

82. BounceBack's misrepresentations were likely to mislead consumers acting reasonably under the circumstances.

83. BounceBack's misrepresentations were material because they were likely to affect the conduct or decisions of consumers regarding whether to pay the alleged debt and program fees.

84. Therefore, BounceBack engaged in deceptive acts or practices that violated the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## COUNT 9—Violations of the CFPA

85. The Bureau re-alleges and incorporates by reference paragraphs 1-41.

86. A covered person's violation of a federal consumer-financial law violates the CFPA. 12 U.S.C. §§ 5536(a)(1)(A), 5481(14).

87. The FDCPA is a federal consumer-financial law. 12 U.S.C. § 5481(12) & (14).

88. BounceBack's FDCPA violations are each a violation of 12 U.S.C. § 5536(a)(1)(A).

## DEMAND FOR RELIEF

The Bureau requests that the Court, as permitted by 12 U.S.C. § 5565:

a. enjoin BounceBack from committing future violations of the FDCPA;

b. enjoin BounceBack from committing future violations of the CFPA;

c. award damages or other monetary relief against BounceBack;

d. order BounceBack to pay redress to consumers;

e. order disgorgement of BounceBack's ill-gotten gains;

f. impose civil money penalties on BounceBack;

g. order BounceBack to pay the costs incurred in connection with prosecuting this action; and

h.     award additional relief as the Court may determine to be just and proper.

Respectfully submitted,

THOMAS G. WARD
Enforcement Director
JEFFREY PAUL EHRLICH
Deputy Enforcement Director
OWEN MARTIKAN
Assistant Litigation Deputy

<u>s/ Stephanie Duff-O'Bryan</u>
STEPHANIE DUFF-O'BRYAN
(TX No. 24087448; NY No. 5026224)
Enforcement Attorney
Telephone: 202-435-9358
e-mail: Stephanie.Duff-OBryan@cfpb.gov
JAMES MEADE
(DC No. 414732)
Senior Litigation Counsel
Telephone: 202-431-1179
e-mail: James.Meade@cfpb.gov
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552


Designated Attorney for Receipt of Service:

JEFFREY P. RAY
(Missouri No. 35632)
Deputy United States Attorney
e-mail: JRay1@usa.doj.gov
Charles Evans Whittaker Courthouse
400 East Ninth Street, Fifth Floor
Kansas City, MO 64106